# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE                                )
                                     )
MONA MORALES                         )     No. 06 B 9886
                                     )
        Debtor.                      )

## MEMORANDUM OPINION ON
## OBJECTION TO CONFIRMATION

This proceeding relates to the Chapter 13 bankruptcy case filed by Mona Morales ("Debtor") on August 15, 2006. Wells Fargo Financial Acceptance, its successors and/or assigns ("Wells Fargo Financial") is a creditor of the Debtor with respect to a certain indebtedness secured by a lien on a 2002 Saab 954 motor vehicle (the "Vehicle"). The Debtor filed a Modified Chapter 13 Plan (the "Plan") on September 18, 2006. Pursuant to Section G of the Plan, Debtor purports to surrender the Vehicle "in full satisfaction of its entire claim." She thereby seeks to eliminate any right of Wells Fargo Financial to file an unsecured claim for any deficiency balance that may remain after liquidating its collateral. Wells Fargo Financial filed an Objection to this provision of the Plan ("Objection").

The Objection presents an issue arising out of the unnumbered provision now often referred to as the "hanging paragraph" that was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to the end of § 1325(a) of the Bankruptcy Code. That issue is whether the "hanging paragraph" allows Debtor to surrender the Vehicle in full satisfaction of

1

Wells Fargo Financial's claim, thereby extinguishing its right under nonbankruptcy law to an unsecured deficiency claim.

For reasons set forth below, it is concluded that the "hanging paragraph" of § 1325(a) does not authorize a debtor to surrender collateral in full satisfaction of a creditor's claim and thereby wipe out that creditor's unsecured deficiency claim. Therefore, by separate order the Objection filed by Wells Fargo Financial is sustained and confirmation of Debtor's Chapter 13 Plan is denied.

## JURISDICTION

This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L). Venue is proper under 28 U.S.C. § 1409(a).

## UNDISPUTED FACTS

The following facts were set forth in the Brief in Support of Objection to Confirmation by Wells Fargo Financial and were adopted by the Debtor in her Amended Brief in Response to Objection to Confirmation. There is no fact dispute. Neither party has requested opportunity to offer evidence, and each presented the issue as one of law without need for trial.

1.      Mona Morales ("Debtor") filed her voluntary petition for relief under Chapter 13 of the Bankruptcy Code on August 15, 2006.

2.      Wells Fargo Financial is a creditor of the Debtor with respect to a certain indebtedness secured by a lien on a 2002 Saab 954 Turbo motor vehicle (the "Vehicle"). On the petition date, the total outstanding balance due to Wells Fargo Financial was $30,769.21.

3.  On August 18, 2006, Debtor filed a Motion to Extend the Automatic Stay pursuant to 11 U.S.C. § 362(c)(3)(B) ("Motion to Extend Stay"). Wells Fargo Financial filed an objection to that motion and the matter was set for hearing on September 14, 2006.

4.  The objection filed by Wells Fargo Financial raised, among other issues, the fact that the Debtor purchased the Vehicle on April 13, 2005, which was within 910 days of her filing for bankruptcy protection, and she financed that purchase through Wells Fargo Financial, thereby granting Wells Fargo Financial a security interest in the Vehicle.

5.  An Agreed Order was entered on September 14, 2006 modifying the automatic stay to permit Wells Fargo Financial to take possession of and foreclose its security interest in the Vehicle, as provided by Illinois law and statute. (Order Sept. 14, 2006.)

6.  On September 18, 2006, Debtor filed a Modified Chapter 13 Plan (the "Plan") to provide for surrender of the Vehicle.

7.  However, additional language in Section G ("Special Terms") of the Plan provided the following: "Special Intentions: Wells Fargo Financial: Debtor is surrendering the 2002 Saab to Creditor in full satisfaction of its entire claim. No payment shall be made on any claim filed by said creditor or its assigns."

8.  On October 5, 2006, Wells Fargo Financial filed its Objection to Confirmation of Modified Plan Filed 9/18/06 ("Objection"). In the Objection, Wells Fargo Financial objected to the language in Section G of the Plan, in that it eliminated any right of it to an unsecured claim for any deficiency balance that may remain, after it liquidated the collateral.

9.  Any facts contained in the Discussion below shall constitute additional undisputed facts.

## DISCUSSION

Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), §§ 1325(a)(5) and 506(a)(1) of the Bankruptcy Code allowed a Chapter 13 debtor to modify the rights of a secured creditor with a purchase money security interest in a vehicle by bifurcating the claim into secured and unsecured portions based on the value of the vehicle. A creditor would thus have a secured claim to the extent of the value of the collateral and an unsecured claim to the extent the creditor's claim exceeded the value of the collateral. The secured portion of the claim would be allowed as secured and paid in full with interest, while the unsecured portion would be paid pro-rata with other general unsecured creditors. Treating a claim in this manner was commonly referred to as "cramdown" in Chapter 13.

Congress viewed debtors' ability to bifurcate a creditor's claim as abusive. "[T]hrough the BAPCPA amendments to § 1325(a)(5), Congress was attempting to remedy a perceived abuse by those who buy vehicles on credit on the eve of bankruptcy and then utilize the cramdown provisions of the Bankruptcy Code to pay the secured creditor a lesser amount than its full claim." In re Payne, 347 B.R. 278, 281 (Bankr. S.D. Ohio 2006).

Section 1325(a)(5) of the Bankruptcy Code, as revised by BAPCPA, provides three alternatives for the treatment of allowed secured claims under a Chapter 13 plan: (1) pursuant to § 1325(a)(5)(A) a plan can be confirmed if the secured creditor accepts the plan; (2) pursuant to § 1325(a)(5)(B) a plan can be confirmed over objection of a holder of an allowed secured claim if the debtor retains the creditor's collateral and pays the value of that collateral as a secured claim, with any balance treated as an unsecured claim; and (3) pursuant to § 1325(a)(5)(C) a plan can be confirmed if the debtor surrenders the collateral to the secured creditor.

BAPCPA added a final paragraph to § 1325(a), unnumbered and inserted after § 1325(a)(9). As noted, this paragraph is called the "hanging paragraph" "given its awkward placement and lacking any identifying number or letter." In re Payne, 347 B.R. 278, 280 (Bankr. S.D. Ohio 2006)).

The "hanging paragraph" provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day (*sic*) preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a).

Pursuant to this provision, bifurcation of a secured claim under 11 U.S.C. § 506 is prohibited under the following circumstances: (1) the creditor has a purchase money security interest; (2) in a motor vehicle acquired for the debtor's personal use; and (3) the debt secured by the vehicle was incurred within 910 days of the filing of the petition. If these requirements exist, bifurcation is not permitted of a secured claim described in § 1325(a)(5).

The parties in this case agree that all those circumstances exist. Wells Fargo Financial possesses a purchase money security interest in the Vehicle acquired for the Debtor's personal use, and the debt secured by the Vehicle was incurred within 910 days of the filing of the petition (the creditor is therefore referred to post-BAPCPA as a "910 creditor"). The "hanging paragraph" therefore applies.

Debtor argues that the "hanging paragraph" should be interpreted so as to allow her to surrender the Vehicle pursuant to her Plan in full satisfaction of her debt to Wells Fargo Financial.

5

The argument is that if Debtor cannot bifurcate this debt then neither can the creditor do so and thereby retain an unsecured deficiency claim. This new provision itself, of course, says no such thing directly; however, it is read by debtor and many judges in conjunction with § 506 to have that effect.

Wells Fargo Financial responds that even if Debtor surrenders the Vehicle pursuant to her Plan and therefore confirms a Plan under § 1325(a)(5)(C), the creditor still retains its state law right to an unsecured claim for any balance remaining after liquidation of the Vehicle and applying the proceeds of the sale in accordance with state law. It argues that §506 cannot apply to this situation both because the new provision says it cannot and other reasons.

Various bankruptcy judges have ruled on the issue of whether a "910 creditor" is entitled to a deficiency balance pursuant to state law after selling the collateral if the proceeds of the sale are insufficient to satisfy the total debt. However, this appears to be an issue of first impression in this District and Circuit.

Most opinions deciding this issue have reached the result supporting the Debtor's position. In In re Ezell, an opinion followed by the majority of Bankruptcy Judges, it was concluded:

> As these sections evidence, Congress intended to prevent bifurcation under Revised § 1325(a)(5) of the class of secured claims falling within the scope of the Anti-Cramdown Paragraph. Beyond these statements of Congressional intent, which basically mirror the statutory language, there is no further clarification. The court has no choice but to interpret the Anti-Cramdown Paragraph as written, i.e., that it applies to both Revised § 1325(a)(5)(B) and (C).

338 B.R. 330, 341 (Bankr. E.D. Tenn. 2006). That opinion further noted:

> Accordingly, under Revised § 1325(a)(5), a creditor holding a secured claim falling within the scope of the Anti-Cramdown Paragraph is fully secured for the amount of its claim, which is, in actuality, the debt owed. If the property is to be retained pursuant to Revised § 1325(a)(5)(B), the debtor must treat the entire claim as secured, and unless the creditor agrees to other treatment, must propose a plan that

will pay the full amount of the claim as secured over the life of the plan. It only stands to reason that the same analysis is true when applied to surrender under Revised § 1325(a)(5)(C) -- the creditor is fully secured, and surrender therefore satisfies the creditor's allowed secured claim in full.

Id. at 340. Other courts have followed similar reasoning. See generally In re Gentry, No. 06-50204, 2006 WL 3392947 (Bankr. E.D. Tenn. Nov. 22, 2006); In re Turkowitch, No. 06-22507, 2006 WL 3346156 (Bankr. E.D. Wis. Nov. 16, 2006); In re Pool, 351 B.R. 747 (Bankr. D. Or. 2006); In re Evans, 349 B.R. 498, (Bankr. E.D. Mich. 2006); In re Payne, 347 B.R. 278 (Bankr. S.D. Ohio 2006). But, of course, these opinions are not stare decisis binding judges of this District.

The minority view holds that surrender of a vehicle does not result in full satisfaction of a claim, thus allowing a creditor to seek whatever state law remedies may be available including right to a deficiency as an unsecured claim in the Chapter 13 plan. See In re Zehrung, 351 B.R. 675 (W.D. Wis. 2006); In re Duke, 345 B.R. 806 (Bankr. W.D. Ky. 2006); In re Particka, No. 06-46162, 2006 WL 33350198 (Bankr. E.D. Mich. Nov. 17, 2006). That appears to be the better reasoned view and will be followed here. In short, the prohibition of bifurcation of a secured "910 creditor" designated to protect that creditor cannot be read to deprive that creditor of its pre-BAPCPA right to a deficiency claim after repossession and sale in the absence of any specific statutory provision to that effect.

The starting point in reaching a decision is, of course, the statutory language. In re Particka, No. 06-46162, 2006 WL 3350198, at *7 (E.D. Mich. Nov. 17, 2006). If a statute is unambiguous, the plain meaning of the language enacted by Congress must be enforced. In re Voelker, 42 F.3d 1050, 1051 (7th Cir. 1994). Only when the language of the statute is ambiguous, or where a literal interpretation would produce an absurd result inconsistent with the purpose of the overall statutory

scheme should a court look beyond the express language of a statute. United States v. Real Estate Known as 916 Douglas Ave., 903 F.2d 490, 492 (7th Cir. 1990). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149 (1992).

The language found in the "hanging paragraph" is unambiguous insofar as it relates to § 506. That provision plainly provides with respect to "910 creditors" that § 506 shall not apply to § 1325(a)(5). It states, "For purposes of paragraph (5) [which deals with secured claims provided for in a Chapter 13 Plan] section 506 shall not apply to a claim described in that paragraph ..." That language is clear and unambiguous; it must be interpreted pursuant to its plain meaning as provided by Congress.

Prior to BAPCPA, if a debtor retained a vehicle and proposed to pay the creditor's allowed secured claim pursuant to § 1325(a)(5)(B), § 506 would apply to determine the specific amount of the allowed secured claim that debtor must pay (usually by reducing that amount to present value). Under BAPCPA, a debtor retaining a vehicle purchased from a "910 creditor" under 1325(a)(5)(B) cannot pay only the reduced present value. With respect to 910 creditors, payment of that cramdown value and retention of the vehicle is no longer permissible.

However, if a debtor surrenders the vehicle, the interests of parties in the collateral and the impact of § 506 changes. Section 506(a) applies only to "an allowed claim of a creditor secured by a lien on property in which the estate has an interest ..." 11 U.S.C. § 506(a). If a confirmed Chapter 13 plan provides for surrender of a vehicle under § 1325(a)(5)(c), the estate no longer has an interest in the vehicle. See In re Particka, No. 06-46162, 2006 WL 3350198, *8 (Bankr. E.D. Mich. Nov. 16, 2006).

8

The method for valuing collateral provided in § 506 is used to determine the amount of an allowed secured claim when the debtor's estate retains an interest in the collateral. When, as in this case, the debtor surrenders the vehicle and the estate no longer has an interest in the property that secures a claim, there is no reason to use the valuation process provided in § 506 to determine the amount of the allowed secured claim. Rather, once the vehicle is surrendered to the creditor pursuant to § 1325(a)(5)(c), the value of the creditors' secured claim is determined under state law, Illinois U.C.C., 810 ILCS 5/9-610-624. See 8 Collier on Bankruptcy, ¶ 1325.06(4) (15th ed. 2006). Pursuant to Illinois law, the creditor is entitled to liquidate the collateral and retain an unsecured claim for the deficiency.

As was explained in In re Particka,

> In other words, the bifurcation process of § 506 does not, and never did, apply to determine a secured and unsecured portion of a secured creditor's allowed claim where the estate does not have an interest in the property securing such claim. Once a debtor surrenders property to a secured creditor, there is no longer any reason to apply § 506(a) to determine the allowed amount of such creditor's secured claim because the estate no longer holds an interest in the property.

No. 06-46162, 2006 WL 3350198, at *8 (Bankr. E.D. Mich. Nov. 17, 2006). Based on this reasoning, Debtor is not entitled to surrender the Vehicle in full satisfaction of her debt to Wells Fargo Financial. Rather, Wells Fargo Financial is entitled to its state law right to liquidate the Vehicle and retain an unsecured claim for any deficiency.

While it is unnecessary to examine the legislative history behind the statute to resolve the issue in this case, it is worth noting that the above interpretation is consistent with the intent of Congress in enacting the § 1325 amendments. The "hanging paragraph" was adopted as part of Pub.

Law No. 109-8, § 306, 119 Stat. 80 (2005), entitled "Giving Secured Creditors Fair Treatment in Chapter 13." More specifically, the section enacting that provision is entitled, "Restoring the Foundation for Secured Credit." As observed in Zehrung, "[i]t seems extremely unlikely, given the purposes expressed in the titles of the amendments, that the intent of the amendment was to eliminate the long existing right of creditors in bankruptcy to an unsecured deficiency claim." In re Zehrung, 351 B.R. 675, 678 (W.D. Wis. 2006). Moreover, it seems even less likely that Congress intended to expand the rights of secured creditors in § 1325(a)(5)(B) while at the same time reducing them in § 1325(a)(5)(C).

## CONCLUSION

For the above reasons stated, this Court will by separate order sustain the Objection of Wells Fargo Financial and deny confirmation of Debtor's Chapter 13 Plan.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 11th day of January 2007.